1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11   RODELIO L. CATAROJA,              ) Case No. EDCV 14-01230-DDP (KK)
                                       )
12                   Petitioner,       )
                                       )
13         v.                          ) FINAL REPORT AND
                                       ) RECOMMENDATION OF UNITED
14   FRED FOULK,                       ) STATES MAGISTRATE JUDGE
                                       )
15                   Respondent.       )
                                       )
16   _____   )
17
18         This Final Report and Recommendation is submitted to the Honorable Dean
19   D. Pregerson, United States District Judge, pursuant to 28 U.S.C. § 636 and
20   General Order 05-07 of the United States District Court for the Central District of
21   California.

22                              **I.**
23                 **SUMMARY OF RECOMMENDATION**
24         Rodelio L. Cataroja ("Petitioner"), a California state prisoner proceeding pro
25   se, has filed a Petition for Writ of Habeas Corpus ("Petition") pursuant to 28
26   U.S.C. § 2254(d), challenging his convictions in Riverside County Superior Court
27   for a series of crimes involving theft, commercial burglary, possession of a stolen
28   firearm, and assault with a firearm.  In support of his request for federal habeas

relief, Petitioner asserts five claims of alleged constitutional error related to alleged due process violations and violations of Petitioner's right to effective assistance of counsel.  Because Petitioner's claims are either procedurally barred by adequate and independent state grounds, or fail on their merits, the Court recommends the Petition be denied.

## II.

## CLAIMS FOR RELIEF

Petitioner's five claims, as presented in his Petition, are as follows:

(1) <u>Claim One:</u> The trial court erroneously admitted evidence of Petitioner's prior bad acts, violating Petitioner's due process rights under the Fourteenth Amendment.

(2) <u>Claim Two:</u> Petitioner's appellate counsel rendered ineffective assistance in failing to challenge the trial court's admission of evidence of prior bad acts on direct appeal, in violation of Petitioner's due process rights under the Fourteenth Amendment.

(3) <u>Claim Three:</u> The state destroyed material physical evidence, violating Petitioner's due process rights under the Fourteenth Amendment.

(4) <u>Claim Four:</u> The trial court made improper comments concerning women's safety, violating Petitioner's due process rights under the Fifth and Sixth Amendments.

(5) <u>Claim Five:</u> Petitioner's trial and appellate counsel rendered ineffective assistance in failing to move for severance and in failing to raise the severance issue on direct appeal, in violation of Petitioner's Sixth Amendment rights and due process rights under the Fourteenth Amendment.

1  Pet. at 10-25.[1]

2

### III.

### PROCEDURAL HISTORY

4       In October 2010, following a jury trial in California Superior Court for the

5  County of Riverside, Petitioner was convicted of: (1) assault with a firearm, in

6  violation of California Penal Code section 245(a)(2); (2) brandishing a firearm at a

7  motor vehicle occupant, in violation of California Penal Code section 417.3; (3)

8  felon in possession of a firearm, in violation of California Penal Code section

9  12020(a)(1); (4) two counts of possession of a loaded firearm, in violation of

10  California Penal Code section 12031(a)(2); (5) seven counts of possession of stolen

11  property, in violation of California Penal Code section 496(a); (6) possession of a

12  completed check, in violation of California Penal Code section 475(c); (7)

13  possession of a blank check, in violation of California Penal Code section 475(b);

14  (8) possession of forged driver's license, in violation of California Penal Code

15  section 475(a); (9) two counts of burglary, in violation of California Penal Code

16  section 459; (10) two counts of possession of an access card, in violation of

17  California Penal Code section 484g(a); and (11) two counts of theft, in violation of

18  California Penal Code section 484(a).  Lodgment ("lodg.") No. 1 at 381-401.[2]  On

19

20  ─────────────

21  [1]     The Petition consists of a form Petition For Writ of Habeas Corpus By A
Person in State Custody (CV-69), with additional pages attached to the form.  The

22  Court's paginated references to the Petition reflect the page numbers displayed at

23  the top of each page on CM-ECF.

24  [2]     The Court's citations to Lodgments refer to the lodged documents filed by
Respondent in support of its Answer.  (ECF Docket No. 9).  Lodgment No. 1 is a

25  copy of the Clerk's Transcript from Petitioner's trial.  Lodgment No. 2 is a copy of

26  the Reporter's Transcript of Petitioner's trial.  Any further citations to Lodgment

27  No. 1 will be abbreviated as "CT," and any further citations to Lodgment No. 2

28                                                                    (continued...)

3

1     February 4, 2011, the trial court sentenced Petitioner to twenty-nine years and

2     eight months in state prison.  Id. at 523-24.

3         The California Court of Appeal affirmed Petitioner's convictions on direct

4     appeal in a reasoned decision on July 24, 2012, specifically addressing Claims

5     Three and Four of the instant Petition.  Lodg. No. 6.  On October 17, 2012, the

6     California Supreme Court summarily denied review of the appeal.  Lodg. No. 8.

7         On October 29, 2012, Petitioner filed a petition for writ of habeas corpus in

8     the California Supreme Court.  Lodg. No. 9.  On November 29, 2012, pursuant to

9     Petitioner's written request, the California Supreme Court ordered the petition

10     withdrawn.  Lodg. No. 10.

11         On November 21, 2012, Petitioner filed a petition for writ of habeas corpus

12     in the Riverside County Superior Court, raising Claims One and Two of the instant

13     Petition.  Lodg. No. 11.  On January 2, 2013, the Superior Court denied the

14     petition.  Lodg. No. 12.

15         On January 18, 2013, Petitioner filed a petition for writ of habeas corpus in

16     the California Court of Appeal, raising Claims One and Two of the instant Petition.

17     Lodg. No. 13.  On February 5, 2013, the Court of Appeal denied the petition.

18     Lodg. No. 14.

19         On April 8, 2013, Petitioner filed a petition for writ of habeas corpus in the

20     California Supreme Court, raising Claims One and Two of the instant Petition.

21     Lodg. No. 15.  On May 22, 2013, the California Supreme Court denied the petition,

22     citing People v. Duvall, 9 Cal.4th 464, 474 (1995) (requiring state habeas petitions

23     to state sufficient facts entitling the petitioner to relief) and In re Dixon, 41 Cal.2d

24     756, 759 (1953) (procedurally barring claims in state habeas petitions that could

25     have been, but were not, raised on direct appeal).  Lodg. No. 16.

26

27     [2](...continued)
        will be abbreviated as "RT."

28

On December 16, 2013, Petitioner filed a petition for writ of habeas corpus in the Riverside County Superior Court, raising Claim Five of the instant Petition. Lodg. No. 17.  On January 2, 2014, the Superior Court denied the petition.  Lodg. No. 18.

On January 21, 2014, Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, raising Claim Five of the instant Petition.  Lodg. No. 19.  On January 28, 2014, the Court of Appeal denied the petition.  Lodg. No. 20.

On February 18, 2014, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, raising Claim Five of the instant Petition.  Lodg. No. 21.  On April 30, 2014, the California Supreme Court denied the petition, citing In re Clark, 5 Cal.4th 750, 767-69 (1993).  Lodg. No. 22.

On June 17, 2014, Petitioner filed the instant Petition, raising the five claims listed in Section II.  (ECF Docket No. ("dkt.") 1). On August 1, 2014, Respondent filed an Answer to the Petition and an accompanying Memorandum of Points and Authorities ("Mem."), contending Claims One, Four, and Five are procedurally barred and that Claims Two and Three fail on their merits.  (Dkt. 8; 8-1).  On October 27, 2014, Petitioner filed a Traverse to Respondent's Answer.  (Dkt. 17).

On December 15, 2015, the Court issued a Report and Recommendation that all of Petitioner's claims be denied, and that Claim Four in particular is procedurally barred.  (Dkt. 19).  On January 13, 2015, Petitioner filed Objections to the Court's Report and Recommendation, arguing the procedural bar to Claim Four is excused because of ineffective assistance of trial counsel.  (Dkt. 20).  The Court herein issues a Final Report and Recommendation, addressing Claim One on its merits.

**IV.**

**RELEVANT FACTS**

5

1    In its reasoned decision affirming Petitioner's convictions, the California

2  Court of Appeal summarized the factual background of the case.  See Lodg. No. 6

3  at 4-5.  Petitioner has not challenged the Court of Appeal's summary, and thus, it is

4  "presumed correct," absent rebuttal by the Petitioner by clear and convincing

5  evidence.  28 U.S.C. § 2254(e)(1).  See also Cooper v. Brown, 510 F.3d 870, 919

6  (9th Cir. 2007) ("Factual determinations by state courts are presumed correct

7  absent clear and convincing evidence to the contrary.") (internal quotation marks

8  and citations omitted).  The Court of Appeal's summary of the facts is excerpted

9  below:

10       **A. The Firearm Assault and Brandishing Charges**

11       **(Counts 1 and 2)**

12            On September 28, 2007, while turning onto the

13       southbound on–ramp of I–15 at Central Avenue in Lake

14       Elsinore, [Fabian] Rosales nearly sideswiped a car driven

15       by defendant. Defendant had just exited the I–15, but

16       instead of turning onto Central Avenue he proceeded

17       onto the southbound I–15 on–ramp. On the on–ramp,

18       Rosales drove behind and slightly to the left of

19       defendant's car, and raised his hand to apologize for

20       nearly sideswiping defendant's car. Defendant slowed his

21       car to around 10 miles per hour on the on–ramp, causing

22       Rosales to slow to the same speed. Defendant then

23       extended his right hand outside his driver's side window,

24       and "flashed a gun" at Rosales.

25            Rosales was able to see the gun very clearly, and

26       identified it as a silver or chrome revolver. Rosales

27       immediately called 911 on his cellular telephone, and

28

6

followed defendant southbound on the I–15. Peace
officers stopped defendant near Rainbow Valley Road
south of Temecula. At that location, Rosales identified
defendant as the person who displayed the gun.

**B. The Theft–[R]elated Charges**

When the officers stopped defendant south of
Temecula, they found two handguns inside his car,
including a loaded silver revolver in working order. The
revolver belonged to a Las Vegas police sergeant, and
had been stolen from the front seat of the officer's
vehicle while the vehicle was parked in the officer's
garage, and the garage doors were open. The other gun
was a semiautomatic handgun. A female, Khamla
Vongvichith, was also in the car.

In the backseat and trunk of defendant's car,
officers found large amounts of clothing and electronic
merchandise, including a Play Station 3, a plasma
television, an iPod, and a laptop and printer combination.
They also found several checkbooks, driver's licenses,
and credit cards belonging to several people other than
defendant and Vongvichith. Additional checks, credit
cards, and driver's licenses belonging to other people
were found at defendant's residence.

All of the items found in defendant's car and
residence had been stolen. Either defendant or
Vongvichith had used other people's credit cards and
driver's licenses to purchase goods at Target, Best Buy,

7

1   and other stores. Three women testified that their purses,
2   including their credit cards, checkbooks, and driver's
3   licenses, had been taken from their cars while their cars
4   were parked in the garages of their residences. One
5   witness testified she saw defendant enter the garage of
6   her employer, while the car was parked in the garage, and
7   it was later discovered that defendant had taken the
8   employer's purse and other belongings from the car.
9   Lodg. No. 6 at 4-5.

## V.

## STANDARD OF REVIEW

Petitioner's claims are subject to the provisions of the Antiterrorism and
Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts
may grant habeas relief to a state prisoner "with respect to any claim that was
adjudicated on the merits in State court proceedings" only if that adjudication:

(1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established
Federal law, as determined by the Supreme Court of the
United States; or (2) resulted in a decision that was based
on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "'[C]learly established Federal law' for purposes of §
2254(d)(1) includes only 'the holdings, as opposed to the dicta, of th[e] [U.S.
Supreme] Court's decisions'" in existence at the time of the state court
adjudication.  White v. Woodall, ___ U.S. ___, 134 S. Ct. 1697, 1702, 1706, 188
L. Ed. 2d 698 (2014) (quoting Howes v. Fields, ___ U.S. ___, 132 S. Ct. 1181,
1187, 182 L. Ed. 2d 17 (2012)).  Additionally, however, "circuit court precedent

1    may be persuasive in demonstrating what law is clearly established and whether a

2    state court applied that law unreasonably." <u>Maxwell v. Roe</u>, 628 F.3d 486, 494

3    (9th Cir. 2010) (internal quotation marks omitted).

4    Overall, AEDPA presents "a formidable barrier to federal habeas relief for

5    prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, ___

6    U.S. ___, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013).  The federal statute presents

7    "a difficult to meet . . . and highly deferential standard for evaluating state-court

8    rulings, which demands that state-court decisions be given the benefit of the

9    doubt." <u>Cullen v. Pinholster</u>, ___ U.S. ___, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d

10   557 (2011) (internal citation and quotation marks omitted).  On habeas review,

11   AEDPA places on petitioners the burden to show that the state court's decision

12   "was so lacking in justification that there was an error well understood and

13   comprehended in existing law beyond any possibility for fairminded

14   disagreement." <u>Harrington v. Richter</u>, ___ U.S. ___, 131 S. Ct. 770, 786-87, 178

15   L. Ed. 2d 624 (2011).  Put another way, a state court determination that a claim

16   lacks merit "precludes federal habeas relief so long as fairminded jurists could

17   disagree" on the correctness of that ruling. <u>Id.</u> at 786.  Federal habeas corpus

18   review therefore serves as "a guard against extreme malfunctions in the state

19   criminal justice systems, not a substitute for ordinary error correction through

20   appeal." <u>Id.</u> (internal citation and quotation marks omitted).

21   Where the last state court disposition of a claim is a summary denial, this

22   Court must review the last *reasoned* state court decision addressing the merits of

23   the claim under AEDPA's deferential standard of review. <u>Maxwell</u>, 628 F.3d at

24   495. <u>See also</u> <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 380, 130 S. Ct. 2250, 176 L.

25   Ed. 2d 1098 (2010) (when a state supreme court denies discretionary review of a

26   decision on direct appeal, the appellate court's decision is the relevant state-court

27   decision for purposes of AEDPA's standard of review); <u>Ylst v. Nunnemaker</u>, 501

28

9

1    U.S. 797, 803-04, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) (holding that

2    California Supreme Court, by silently denying petition for review over appellate

3    decision, presumably did not intend to change the California Court of Appeal's

4    analysis).

5         Contrarily, when a state court "does not supply reasoning for its decision [on

6    a petitioner's claims]," the Court must "engage in an 'independent review of the

7    record' and ascertain whether the state court's decision was 'objectively

8    unreasonable.'" Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting

9    Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000)).  Notably, this does not

10   operate as "de novo review." Id. (quoting Himes v. Thompson, 336 F.3d 848, 853

11   (9th Cir. 2003)).  That is, it "remains the petitioner's burden to demonstrate that

12   'there was no reasonable basis for the state court to deny relief.'" Id. (quoting

13   Richter, 131 S. Ct. at 786).

14        Where the last state court disposition of a federal claim does not reach the

15   merits *at all* and instead relies on a procedural bar later held inadequate to

16   foreclose federal habeas review, the Court must review the state court's denial of

17   the claim *de novo* and without deference.  See Pirtle v. Morgan, 313 F.3d 1160,

18   1167 (9th Cir. 2002); see also Cone v. Bell, 556 U.S. 449, 472, 129 S. Ct. 1769,

19   173 L. Ed. 2d 701 (2009) (where state court relies on an inadequate procedural bar

20   and does not address merits, "federal habeas review is not subject to the deferential

21   standard that applies under AEDPA to 'any claim that was adjudicated on the

22   merits in State court proceedings.'") (quoting 28 U.S.C. § 2254(d)).

23        Here, the California Court of Appeal's opinion disposing of Petitioner's

24   direct appeal, see Lodg. No. 6, stands as the last reasoned decision with respect to

25   Claims Three and Four of the instant Petition.  The California Supreme Court's

26   denial of Petitioner's state habeas petition on May 22, 2013 constitutes the last

27   state court disposition of Claims One and Two of the instant Petition.  Lodg. No.

28

10

16.  The California Supreme Court's denial of Petitioner's state habeas petition on April 30, 2014 constitutes the last state court disposition of Claim Five of the instant Petition.  Lodg. No. 22.

The Court of Appeal's reasoned decision with respect to Claims Three and Four will, thus, be reviewed under AEDPA's deferential standard of review for claims "adjudicated on the merits."  28 U.S.C. § 2254(d); <u>Richter</u>, 131 S. Ct. at 784.  Furthermore, with respect to Claims One, Two, and Five, the Court must "engage in an 'independent review of the record'" to determine whether the California Supreme Court's summary denials were "objectively unreasonable," if the denials did not rest solely on a procedural bar.  <u>Walker</u>, 709 F.3d at 939 (quoting <u>Delgado</u>, 223 F.3d at 982).  If any of these summary denials *did* rest solely on a state procedural bar, the Court must review them *de novo*.  See <u>Pirtle</u>, 313 F.3d at 1167; <u>see also</u> <u>Cone</u>, 556 U.S. at 472.

## VI.

## DISCUSSION

## A.   **Claims One is Procedurally Barred**

In Claim One, Petitioner argues the trial court violated his due process rights by erroneously admitting evidence of prior bad acts.  Pet. at 10-14.  Specifically, Petitioner claims the trial court erred in admitting witness Ashley Cecaci's testimony that she saw Petitioner enter her employer's car and that her employer later stated her red planner was missing.  <u>Id.</u>  Petitioner raised this claim in his state habeas petition to the California Supreme Court on April 8, 2013.  Lodg. No. 15. On May 22, 2013, the California Supreme Court denied the petition, citing <u>People v. Duvall</u>, 9 Cal.4th 464, 474 (1995) and <u>In re Dixon</u>, 41 Cal.2d 756, 759 (1953). Lodg. No. 16.

### 1.    **Procedural Bars on Federal Habeas Review**

On federal habeas review, the Court will not review a claim on its merits if it

11

1   is procedurally barred, that is, where a state court dismissed the claim on an

2   "adequate and independent" state law ground.  See Walker v. Martin, ___ U.S.

3   ___, 131 S. Ct. 1120, 1127-28, 179 L. Ed. 2d 62 (2011); Coleman v. Thompson,

4   501 U.S. 722, 729, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991).  In order for a claim

5   to be procedurally defaulted for federal habeas corpus purposes, the opinion of the

6   last state court rendering a judgment in the case must "clearly and expressly" state

7   that its judgment rests on a state procedural bar.  Harris v. Reed, 489 U.S. 255,

8   263, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989).  Further, "the application of the

9   state procedural rule must provide 'an adequate and independent state law basis' on

10   which the state court can deny relief."  Park v. California, 202 F.3d 1146, 1151

11   (9th Cir. 2000) (quoting Coleman, 501 U.S. at 729-30).

12       When a respondent shows a claim is procedurally barred, the burden of

13   proof shifts to the habeas petitioner to show cause for the default and actual

14   prejudice resulting from the alleged constitutional violation, or that failure to

15   consider the claim will result in a fundamental miscarriage of justice.  See Carter v.

16   Giubino, 385 F.3d 1194, 1198 (9th Cir. 2004) (citing Bennett v. Mueller, 322 F.3d

17   573, 586 (9th Cir. 2003)); see also Gray v. Netherland, 518 U.S. 152, 162, 116 S.

18   Ct. 2074, 135 L. Ed. 2d 457 (1996).

19       A California state court's citation to In re Dixon signifies a claim was denied

20   on habeas review because it could have been, but was not, raised on direct appeal.

21   Dixon, 41 Cal.2d at 759; see In re Harris, 5 Cal.4th 813, 934 (1993).  Although the

22   Dixon rule was not consistently applied before Harris was decided, see Fields v.

23   Calderon, 125 F.3d 757, 765 (9th Cir. 1997) (refusing to honor Dixon rule where

24   default occurred before Harris), federal courts (including the Ninth Circuit) have

25   since upheld application of the Dixon bar where the petitioner has failed to present

26   authority that it has been inconsistently applied.  See, e.g., Flores v. Roe, 228 F.

27   App'x 690, 691 (9th Cir. 2007) (district court properly concluded petitioner's

28

12

claim was barred under <u>Dixon</u> because petitioner failed to raise the claim on direct appeal); <u>Protsman v. Pliler</u>, 318 F. Supp. 2d 1004, 1008 (S.D. Cal. 2004); <u>Cree v. Sisto</u>, No. CV 08-00487-AK, 2011 WL 66253, at *1 (E.D. Cal. Jan. 7, 2011) ("The *Dixon* rule is independent, because it is applied without any consideration of federal law.") (Kozinski, J., sitting by designation).

### 2. <u>Analysis</u>

Here, the California Supreme Court "clearly and expressly" invoked the <u>Dixon</u> bar in its decision rejecting Petitioner's state habeas petition, which included Claim One of the instant Petition. <u>See</u> Lodg. No. 16. Because the <u>Dixon</u> rule is an "adequate and independent" ground for procedural default, the California Supreme Court's decision operates as a procedural bar to the merits of Claim One.[3] Furthermore, Petitioner has not raised any grounds demonstrating that the procedural default should be excused and that the Court may reach the merits of Claim One.[4] Accordingly, Claim One must be denied as procedurally barred by

---

[3]     Admittedly, the California Supreme Court *also* cited <u>People v. Duvall</u>, 9 Cal.4th 464, 474 (1995). Lodg. No. 16. A California state court's citation to <u>Duvall</u> when denying a state habeas petition indicates a petitioner has not stated sufficient facts entitling him to habeas relief. <u>Gaston v. Palmer</u>, 417 F.3d 1030, 1039 (9th Cir. 2005). To the extent the California Supreme Court's citation to <u>Duvall</u> can be considered a decision on the merits of Petitioner's claim, this is irrelevant to whether the <u>Dixon</u> rule operates as a procedural bar to Claim One. <u>See Harris</u>, 489 U.S. at 264 n.10 (holding a state court's alternative holding on the merits does not affect the independence or adequacy of the cited procedural bar).

[4]     In Claim Two, Petitioner contends his appellate counsel rendered ineffective assistance of counsel in failing to raise Claim One on his direct appeal. Although ineffective assistance of counsel could excuse Claim One's procedural bar, <u>see Murray v. Carrier</u>, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986), the Court rejects Claim Two in Section VI.B. Accordingly, the Court concludes the procedural bar to the merits of Claim One is not excused.

the California Supreme Court's decision.  See <u>Walker</u>, 131 S. Ct. at 1127-28.

**B.  <u>Claim Two Does not Warrant Habeas Relief</u>**

In Claim Two, Petitioner claims his right to effective assistance of appellate counsel under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution was violated when his appellate counsel failed to raise Claim One of the instant Petition on direct appeal.  Pet. at 15-16.  The California Supreme Court disposed of Petitioner's ineffective assistance claim when it summarily denied Petitioner's state habeas petition on May 22, 2013.[5]  Lodg. No. 16.  Accordingly, the Court engages in an "independent review of the record" to determine "whether the state court's decision was objectively unreasonable."  <u>Walker v. Martel</u>, 709 F.3d 925, 939 (9th Cir. 2013) (internal quotation marks and citations omitted); <u>see also</u> 28 U.S.C. § 2254(d).

**1.  <u>Ineffective Assistance of Appellate Counsel Claims</u>**

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. <u>Evitts v. Lucey</u>, 469 U.S. 387, 391-405, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985).

---

[5]     As noted in Section VI.A.2., the California Supreme Court's summary denial of Petitioner's state habeas petition on May 22, 2013 cited <u>People v. Duvall</u>, 9 Cal.4th 464, 474 (1995) and <u>In re Dixon</u>, 41 Cal.2d 756, 759 (1953).  Lodg. No. 16.  In Section VI.A.2., the Court construes the summary denial's citation to <u>Dixon</u> as an invocation of a procedural bar *in regard to Claim One* for failure to raise the claim on direct appeal.  The Court also noted in Section VI.A.2. n.3 that the summary denial's citation to <u>Duvall</u> could be construed as a decision on the merits of the claims raised in Petitioner's state habeas petition.  Because it would have been impossible for Petitioner to have raised Claim Two—premised on ineffective assistance of *appellate* counsel—on direct appeal, the Court construes the summary denial as a disposition on the *merits of Claim Two* rather than an invocation of <u>Dixon</u>'s procedural bar.

For a petitioner to prevail on his ineffective assistance of appellate counsel claims, he must satisfy a two-prong test established in Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The petitioner must show: (1) counsel's performance was deficient; and (2) he was prejudiced by the deficient performance. Smith v. Robbins, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000) (adopting Strickland standard for assessing claims of ineffective assistance of *appellate* counsel). A court evaluating an ineffective assistance of counsel claim does not need to address both components of the test if a petitioner cannot sufficiently prove one of them. Strickland, 466 U.S. at 697; see also Thomas v. Borg, 159 F.3d 1147, 1152 (9th Cir. 1998).

First, to prove deficient performance, a petitioner must show counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88. Because of the difficulty in evaluating counsel's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Only if counsel's acts or omissions, examined in light of all the surrounding circumstances, fell outside this "wide range" of professionally competent assistance will the petitioner prove deficient performance. Id. at 690; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).

Second, to demonstrate prejudice as a result of appellate counsel's deficient performance, a petitioner must demonstrate a "reasonable probability" that he would have prevailed on appeal, but for appellate counsel's errors. Miller v. Keeney, 882 F.2d 1428, 1434 & n.9 (9th Cir. 1989).

A federal habeas court's review of a claim under the Strickland standard is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009). The relevant question "is not whether a federal court believes the state court's determination under the Strickland standard was incorrect

15

1   but whether that determination was unreasonable – a substantially higher
2   threshold." Id. (citations omitted).  "[B]ecause the Strickland standard is a general
3   standard, a state court has even more latitude to reasonably determine that a
4   defendant has not satisfied that standard." Id. (citation omitted).

5           **2.**    **Relevant Trial Court Proceedings**

6        On October 4, 2010, defense counsel filed a pretrial motion *in limine* to,
7   among other things, suppress evidence of Petitioner's prior bad acts for the
8   theft-related charges at issue, pursuant to California Evidence Code section 352.
9   CT 274-288.  On the same day, the prosecution moved the trial court to permit
10  evidence of Petitioner's prior bad acts, pursuant to California Evidence Code
11  section 1101(b), to show lack of mistake and intent.  Id. at 312-317.  During the
12  pretrial argument on the motions, the trial court indicated it would allow the
13  evidence of prior bad acts if proper foundation was laid.  RT 24-26; CT 272.

14       Later, during trial, defense counsel objected with specificity to witness
15  Ashley Cecaci's testimony that she saw Petitioner enter her employer's car parked
16  in her employer's garage, and that her employer later said her wallet was taken.
17  RT 140-141.  Defense counsel argued the act described by Cecaci was a residential
18  burglary, but Petitioner was not charged with a residential burglary in this case.[6]
19  Id. at 141.  Consequently, defense counsel argued, admission of the prior act would
20  have little to no probative value.  Id.  The trial court overruled defense counsel's

21

22  _____
23  [6]    The burglary described by Cecaci was the subject of a separate criminal case
    filed against Petitioner, which the California Court of Appeal ultimately reversed
24  in May 2010.  See Pet., Ex. M.  However, the Court of Appeal's reversal has no
    bearing on the admissibility of the facts underlying the burglary at Petitioner's trial
25  in the instant case.  California Evidence Code section 1101 permits introduction of
    evidence of *any* prior bad act, whether a crime or civil wrong.  See Cal. Evid. Code
26  § 1101(b).  The statute's provisions do not exclude a bad act where a person's
27  criminal conviction for the bad act has been invalidated on appeal.

28

objection, holding the evidence was admissible to show the method by which
Petitioner acquired the credit cards and other stolen materials from the other
victims in the present case.  Id.

Cecaci then testified that on April 14, 2008, she was employed as a nanny
for Phyllis Hartman's two children.  Id. at 144.  Cecaci said she was on her way to
the Hartman home to pick up one of the children when she saw a truck she did not
recognize parked in an unusual spot in a neighbor's driveway.  Id. at 145.  She
stopped in the street in front of the Hartman house and noticed the garage door was
open.  Id.  She testified she saw Petitioner run from behind the bushes in the
neighbor's yard, into the Hartman garage, and into the passenger seat of Phyllis
Hartman's car.  Id. at 146.  Cecaci claimed Hartman subsequently told her that her
"checkbook" was no longer in her car.  Id. at 148.  Cecaci testified this checkbook
was a large red planner in which Hartman would keep her personal items.  Id. at
151.

Michael Barnbeck, a sergeant with the Las Vegas Metropolitan Police
Department, testified that in July 2007, his backup weapon was stolen from his
vehicle while it was parked in his garage.  Id. at 152-53.  Barnbeck identified a
revolver, allegedly seized from Petitioner, as his stolen firearm.  Id. at 154-155.
Similarly, three additional witnesses testified that their purses, including credit
cards, checkbooks, and driver's licenses allegedly seized from Petitioner, had been
taken from their cars while their cars were parked in the garages of their
residences.  Id. at 53 (Angelica Corona Ornelas); 72-73 (Amy Erickson); 85
(Pamela Lyn Dvorak).

**3.   Analysis**

Here, Petitioner claims his appellate counsel acted unreasonably in failing to
raise Claim One.  Pet. at 15-16.  In Claim One, Petitioner argues Cecaci's
testimony regarding his prior bad acts was substantially more prejudicial than

17

1    probative and therefore inadmissible under California Evidence Code 352.  Id. at

2    13.  See Cal. Evid. Code § 352 ("The court in its discretion may exclude evidence

3    if its probative value is substantially outweighed by the probability that its

4    admission will (a) necessitate undue consumption of time or (b) create substantial

5    danger of undue prejudice, of confusing the issues, or of misleading the jury.").

6          Petitioner's claim is without merit because he cannot show a "reasonable

7    probability" he would have prevailed on appeal if appellate counsel had raised

8    Claim One as he suggests.  See Miller, 882 F.2d at 1434 & n.9.  Cecaci's testimony

9    was admitted pursuant to California Evidence Code section 1101(b).  Section

10   1101(b) permits introduction of "evidence that a person committed a crime, civil

11   wrong, or other act when relevant to prove some fact (such as motive, opportunity,

12   intent, preparation, plan, knowledge, identity, absence of mistake or accident . . .

13   )."  See Cal. Evid. Code § 1101(b).  Here, the trial court correctly admitted the

14   evidence of the prior bad act pursuant to section 1101(b) in order to prove a highly

15   probative fact—the method by which Petitioner robbed items from vehicles in the

16   garages of Barnbeck and the other testifying victims.  RT 141.  Given the probative

17   value of the evidence, it is unlikely a challenge on appeal to the admissibility of the

18   Cecaci's testimony would have succeeded even if Petitioner's appellate counsel

19   had brought it.  See Miller, 882 F.2d at 1434 & n.9; see also Cal. Evid. Code § 352.

20

21         Consequently, under the "doubly" deferential standard of review established

22   by AEDPA and Strickland, the Court must therefore conclude the California

23   Supreme Court's denial of Claim Two was not "contrary to" or an "unreasonable

24   application" of "clearly established federal law."  28 U.S.C. § 2254(d)(1);

25   Knowles, 556 U.S. at 123.  Accordingly, habeas relief is not warranted on Claim

26   Two.

27   **C.   Claim Three Does not Warrant Habeas Relief**

28

1    In Claim Three, Petitioner claims his right to due process under the

2    Fourteenth Amendment to the U.S. Constitution was violated when the state failed

3    to preserve an audio recording of Fabian Rosales' 911 phone call on September 28,

4    2007.  Pet. at 16-20.  The California Court of Appeal disposed of Petitioner's claim

5    on its merits in its reasoned decision on July 24, 2012.  Lodg. No. 6 at 6-12.

6    Accordingly, the Court reviews the Court of Appeal's reasoned disposition of

7    Petitioner's claim as an "adjudication on the merits" subject to deference under

8    AEDPA.  See 28 U.S.C. § 2254(d).

9         **1.    Relevant Trial Court Proceedings**

10    In the trial court proceedings, Petitioner was charged with two crimes arising

11    from his encounter with Fabian Rosales: (1) assault with a firearm ("Count One");

12    and (2) brandishing a firearm in the presence of a person in a moving vehicle

13    ("Count Two").  CT 239-40.  On April 9, 2010, Petitioner filed an informal request

14    for discovery, including audio recordings of 911 calls.  Id. at 38.  However, on July

15    17, 2010, in response to the district attorney's request for a copy of the recording

16    of Rosales' 911 call, CHP informed the district attorney in a letter that the

17    recording had been purged from CHP records 180 days after the call pursuant to

18    standard CHP practice.  RT 39.

19    On October 5, 2010, shortly before jury selection, defense counsel made a

20    motion for a special instruction regarding Counts One and Two, because of the

21    state's failure to preserve the audio recording of Rosales' 911 call.  Id. at 38-39.

22    While defense counsel admitted he did not believe the recording was destroyed in

23    bad faith and did not request a dismissal of the charges, he asked the court to at

24    least instruct the jury "as to [the recording] being purged and the defense being

25    hindered in that regard."  Id. at 39.  The trial court denied the request, noting the

26    defense had ample time to investigate the recording.  Id. at 42.

27    At trial, Rosales testified Petitioner was not pointing the gun at him and was

28

only "showing" him the gun. Id. at 115.  However, California Highway Patrol ("CHP") officer Steven Jio testified Rosales told him Petitioner had *pointed* the gun at Rosales. Id. at 175-76.  During closing argument, prosecution contended Petitioner pointed his gun at Rosales on September 28, 2007.  See id. at 237-38, 241-42.  Defense counsel contested this interpretation of the evidence, citing Rosales' testimony and suggesting Jio's recollection of Rosales' out-of-court statements was incorrect. Id. at 253-55.  In the instant Petition, Petitioner suggests the recording of Rosales' 911 call would have corroborated defense counsel's argument that he merely brandished the gun at Rosales, instead of pointing it.  Pet. at 16-20.

### 2.   Preservation of Evidence Claims

The government violates a defendant's due process rights when it fails to preserve evidence in a criminal case if: (1) the evidence "might be expected to play a significant role in the suspect's defense,"; (2) the evidence has exculpatory value; (3) the exculpatory value is apparent before the evidence is destroyed; (4) the defendant is "unable to obtain comparable evidence by other reasonably available means"; and (5) the government acted in bad faith.  California v. Trombetta, 467 U.S. 479, 488-89, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984) (citations and footnote omitted); see also Arizona v. Youngblood, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988) (adding the bad faith requirement).

### 3.   The State Court Decision

On direct appeal, the Court of Appeal rejected Petitioner's preservation of evidence claim.  Lodg. No. 6 at 6-12.  The Court of Appeal conceded the audio recording of Rosales' call "contained potentially exculpatory evidence because it may have included statements by Rosales that defendant did not point a gun directly at him but only showed him a gun." Id. at 6.  However, the Court of Appeal concluded Petitioner had failed to show the state acted in bad faith in

1  destroying the audio tape—a requirement for proving a due process violation under
2  Arizona v. Youngblood, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988).
3  Id. at 12.  While Petitioner argued the state knew or should have known the 911
4  recording contained potentially exculpatory material, this was insufficient to
5  establish a due process violation in the absence of bad faith.  Id.  Furthermore, the
6  Court of Appeal noted that when defense counsel requested the special instruction
7  regarding Counts One and Two, he conceded there was no indication the recording
8  was destroyed in bad faith.  Id.  Hence, the Court of Appeal rejected Petitioner's
9  claim.  Id.

10      **4.  Analysis**

11      The Court holds the Court of Appeal's decision was not unreasonable.  As
12  the Court of Appeal noted and as defense counsel himself appears to have
13  conceded, there was no evidence in the state court record showing the recording of
14  Rosales' 911 call was destroyed in bad faith.  See RT 39; Lodg. No. 6 at 12.
15  Petitioner has also not alleged any facts in the instant Petition indicating the
16  recording was destroyed in bad faith.  Rather, the CHP's July 2010 letter to the
17  district attorney shows the recording of Rosales' 911 call was destroyed pursuant
18  to standard CHP operating procedures.  See RT 39.  Consequently, under
19  Youngsblood, Petitioner has not shown a due process violation resulting from the
20  state's failure to preserve the recording.  Youngblood, 488 U.S. at 58.  Thus, the
21  Court holds the Court of Appeal's decision was not "contrary to" or "an
22  unreasonable application of, clearly established Federal law, as determined by the
23  Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Accordingly,
24  habeas relief is not warranted on Claim Three.

25  **D.  Claim Four Does not Warrant Habeas Relief**

26      In Claim Four, Petitioner argues the trial court violated his due process
27  rights by making improper comments to the jury before closing arguments.  Pet. at

28

20-22.  Specifically, Petitioner challenges the trial court's statements providing female jurors with advice on how to avoid potential robbers who might seek to steal their purses and belongings.  Id.  On July 24, 2012, the California Court of Appeal rejected Petitioner's claim on its merits in a reasoned decision on direct appeal.[7]  Lodg. No. 6 at 14.  Accordingly, the Court reviews the Court of Appeal's reasoned disposition of Petitioner's claim as an "adjudication on the merits" subject to deference under AEDPA.  See 28 U.S.C. § 2254(d).

## 1.    **Relevant Trial Court Proceedings**

Following the presentation of the evidence, but before closing arguments, the trial court made the following comments to the jury, without objection by the defense:

> Before I forget, this has nothing to do with the
> case, and I do get to talk about things, but I'm just going
> to talk to you women. I'm going to remind you of
> something, about purses and stuff, okay?

---

[7]    Respondent contends Claim Four is procedurally barred because the California Court of Appeal also concluded Petitioner forfeited the claim by failing to raise it through an objection at trial.  Mem. at 18; see Lodg. No. 6 at 13-14.  In Petitioner's Objections to the Court's original Report and Recommendation, Petitioner suggests the procedural bar is excused by ineffective assistance of trial counsel.  Objections at 7-8.  Because Claim Four is more easily resolved on the merits, while the procedural default argument is much more complex, in the interest of judicial economy, this Court considers Claim Four on its merits rather than addressing the procedural default issue.  See Lambrix v Singletary, 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be."); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same.").

1          I am certain that you all shop and that you come to

2      your car with your purse and bags and you put them in

3      the car, and then you sit down in your car and you move

4      your purse and you look for your keys, and you do this

5      and you do that. At that time in life you are the most

6      vulnerable. You're in a car, you're inattentive, keys are in

7      the car, your property is in the car. Those people who

8      wish to prey on you know that.

9          I have a recommendation for you. As a matter of

10     just practice, when you get to your car, you load stuff,

11     you have your keys out, you get in your car, you put the

12     keys in, you start the car and you drive away. And then if

13     you want to rearrange stuff, drive away a couple of

14     blocks and pull over and do it. You understand what I'm

15     talking about?

16         Yeah. I mean, you truly are there with all your

17     property, with your car, with your keys, and you're

18     doing—you're looking, okay? And I've tried a lot of

19     cases where that is your vulnerable spot. So I just throw

20     that out to you to think about. Because I know you don't

21     do that. And you all know you should. Okay. That's all I

22     have to say. It has nothing to do with this case, it has to

23     do with life.

24   RT 234-35.

25         2.    **The State Court Decision**

26   On direct appeal, Petitioner claimed the trial court's comments to the female

27   jurors were improper and violated his rights to a fair trial and an impartial jury.

28

23

1   Lodg. No. 3 at 30.  The California Court of Appeal rejected Petitioner's due

2   process claim.  Lodg. No. 6 at 14-15.  While the Court of Appeal acknowledged

3   that the trial court's comments were "ill-considered and better left unsaid," it

4   concluded "the jury could not have reasonably understood the comments as

5   discrediting the defense or prejudicing the charges" against Petitioner.  Id. at 14.

6   The Court of Appeal reasoned the trial court twice told the jurors, both before and

7   after the comments at issue, that the comments had "nothing to do with the case."

8   Id.  The Court of Appeal also noted there was no evidence any of the alleged

9   female victims of the theft-related charges had been confronted or assaulted by

10  Petitioner when their possessions were taken from their cars.  Id. at 14-15.  Hence,

11  the Court of Appeal concluded "the trial court's remarks were not so prejudicial

12  that they denied defendant a fair trial."  Id. at 15.

13          **3.    Judicial Bias Claims**

14          The Due Process Clause requires a "fair trial in a fair tribunal" before a

15  judge with no actual bias against the defendant.  Bracy v. Gramley, 520 U.S. 899,

16  904-05, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997); Smith v. Mahoney, 611 F.3d

17  978, 997 (9th Cir. 2010).  Where judicial bias is claimed, habeas relief is limited to

18  circumstances in which the state trial judge's behavior rendered the trial so

19  fundamentally unfair as to violate due process.  See Duckett v. Godinez, 67 F.3d

20  734, 740 (9th Cir. 1995).  To succeed on a judicial bias claim, Petitioner must

21  "overcome a presumption of honesty and integrity in those serving as

22  adjudicators."  Withrow v. Larkin, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d

23  712 (1975); Larson v. Palmateer, 515 F.3d 1057, 1067 (9th Cir. 2008).

24          **4.    Analysis**

25          The Court finds the Court of Appeal's decision was not unreasonable.

26  Petitioner fails to show the trial court's comments to the jury were so prejudicial as

27  to render his trial "fundamentally unfair."  Duckett, 67 F.3d at 740.  As the Court

28

of Appeal observed, the comments carried little risk of prejudice because there was no evidence suggesting Petitioner stole from any victims, male or female, in the manner the trial judge warned female jurors of.  That is, there was no evidence Petitioner directly stole items from victims while they were in their cars.  Furthermore, to the extent the comments were prejudicial to Petitioner, the Court must presume the jury complied with the trial judge's multiple admonitions that the comments at issue had nothing to do with the case against Petitioner.  See Ho v. Carey, 332 F.3d 587, 594 (9th Cir. 2003) ("We must presume that a jury follows the trial court's instructions.") (citing Francis v. Franklin, 471 U.S. 307, 324 n.9, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985)).  Hence, the Court holds the Court of Appeal's rejection of Claim Four was not "contrary to" or an "unreasonable application" of "clearly established federal law."  28 U.S.C. § 2254(d)(1); Knowles, 556 U.S. at 123.  Accordingly, habeas relief is not warranted on Claim Four.

**E.    Claim Five Does not Warrant Habeas Relief**

In Claim Five, Petitioner argues: (1) his trial counsel was ineffective for failing to move for severance of his assault with a firearm-related crimes from his theft-related crimes (violating his Sixth Amendment rights); and (2) his appellate counsel was ineffective for failing to raise the severance issue on direct appeal (violating his Fourteenth Amendment rights).  Pet. at 22-25.  On April 30, 2014, the California Supreme Court disposed of this claim when denying Petitioner's state habeas petition.[8]  Lodg. No. 22.  Because the California Supreme Court

---

[8]    Respondent contends Claim Five is procedurally barred in light of the California Supreme Court's citation to In re Clark, 5 Cal.4th 750, 767-69 (1993), in its summary denial.  Mem. at 20-22.  Because Claim Five is more easily resolved on the merits, while the procedural default argument is much more complex, in the

(continued...)

appears to have disposed of this claim on state procedural grounds, see id., the Court reviews the merits of Petitioner's claim *de novo*, without the deference normally accorded to a state court decision under AEDPA.  See Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002); see also Cone v. Bell, 556 U.S. 449, 472, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009).

### 1.    Relevant Trial Court Proceedings

During the trial court proceedings, the prosecution filed a motion to consolidate two criminal cases against Petitioner involving theft-related offenses with a separate criminal case against Petitioner concerning firearm-related offenses.  CT 219-23.  Defense counsel did not object to the motion.  RT 18.  The trial court granted the motion, approvingly stating "[i]t looks like it's all the same classic crimes."  Id.

### 2.    Ineffective Assistance of Trial and Appellate Counsel Claims

See Section VI.B.1. above for a summary of the legal standard concerning ineffective assistance of trial and appellate counsel claims, under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

### 3.    Joinder of Charges under California Law

Under California law, "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, or different statements

---

[8](...continued)
interest of judicial economy, this Court considers Claim Five on its merits rather than addressing the procedural default issue.  See Lambrix v Singletary, 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be."); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently more complex than the merits issues presented by the appeal, so it may well make sense in some instances to proceed to the merits if the result will be the same.").

of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated." Cal. Penal Code § 954. "Because consolidation ordinarily promotes efficiency, the law prefers it." People v. Lucas, 60 Cal. 4th 153, 214, 333 P.3d 587 (2014) (internal quotation marks and citation omitted). Indeed, joinder of different offenses is permissible "even though they do not relate to the same transaction or event, if there is a common element of substantial importance in their commission . . . ." People v. Scott, 24 Cal. 2d 774, 778, 151 P.2d 517 (1944).

The prejudice to a defendant resulting from the joinder of charges must not outweigh the benefits of joinder. See People v. Soper, 45 Cal.4th 759, 780, 200 P.3d 816, 831 (2009). In assessing prejudice to a defendant from the joinder of charges, a court must look to three factors: "[1] whether some of the charges are likely to unusually inflame the jury against the defendant; [2] whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and [3] whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case." People v. Thomas, 53 Cal.4th 771, 798-99, 269 P.3d 1109 (2012). "The burden is on the defendant . . . to persuade the court that . . . [the benefits of joinder] are outweighed by a substantial danger of undue prejudice." People v. Bean, 46 Cal. 3d 919, 939, 760 P.2d 996 (1988). A trial court's denial of a motion for severance is reviewed for abuse of discretion. People v. Jones, 57 Cal.4th 899, 925, 306 P.3d 1136 (2013).

The California Supreme Court applied these principles under facts similar to those here, in People v. Scott. 24 Cal.2d 774. In Scott, the Court affirmed a trial court's joinder of charges of rape and unlawful interference with identification marks on a firearm. 24 Cal.2d at 778-79. The Court reasoned the firearm-related

1  charge was "a common and important element" of the rape charge because the

2  firearm in question was used to intimidate the alleged rape victim during

3  commission of the rape.  Id. at 779.  Hence, the Court held it was not an abuse of

4  discretion for the trial court to have joined the charges.  Id.

5        **4.**    **Analysis**

6        As in Scott, the consolidation of the firearm and theft-related charges here

7  was proper under Section 954.  There were common elements of substantial

8  importance in their commission.  First, the stolen materials that were the subject of

9  the theft-related charges were found in Petitioner's possession when he was

10  arrested immediately after he committed the firearm-related charges against Fabian

11  Rosales on September 28, 2007.  Second, as was the case in Scott, the gun

12  Petitioner used to commit the firearm-related charges against Rosales was one of

13  the items that was the subject of the theft-related charges.  The gun was stolen from

14  Michael Barnbeck's car[9] in a manner similar to the theft of other property from the

15  cars of other victims in the case.  See RT 116.

16        Petitioner claims the joinder was prejudicial because jurors were presented

17  with prior bad acts evidence relevant to the theft-related offenses that was

18  completely unrelated to the firearm-related offenses and would not have been

19  cross-admissible with the firearm-related offenses.  Pet. at 24.  Petitioner also

20  argues the evidence of the theft-related offenses would have caused the jurors to

21  view Petitioner as a "career criminal" and would have led them to convict him of

22  the firearm-related charges.  Id. at 25-26.

23

24

———————————

25  [9]     Petitioner was charged with and convicted of possession of stolen property,

26  in violation of California Penal Code section 496(a), in connection with his

27  possession of the gun stolen from Michael Barnbeck.  See CT 335 (Third Amended

28  Information); 386 (jury verdict).

1    Weighing the factors identified in <u>Thomas</u>, the Court concludes joinder of

2    the charges did not result in undue prejudice to Petitioner.  53 Cal.4th at 798-99.

3    First, none of the charges were unusually likely to inflame the jury against

4    Petitioner.  While each set of charges against Petitioner admittedly may have

5    reflected unfavorably on Petitioner's character, neither set of charges was

6    particularly inflammatory in comparison with the other.  Second, there was ample

7    evidence supporting both sets of charges: Rosales' account of his encounter with

8    Petitioner on September 28, 2007 and the property seized from Petitioner

9    established a strong case for Petitioner's guilt.  In short, a weak case was not joined

10   with a strong case here.  Third, consolidation of the charges did not convert the

11   matter into a capital case.  Ultimately, the three <u>Thomas</u> factors show there was

12   little to no prejudice to Petitioner resulting from joinder of the charges.

13   Given the links between the theft and firearm-related charges and weighing

14   the <u>Thomas</u> factors, the Court finds the benefits of consolidation outweighed any

15   risk of prejudice.  Furthermore, since it was Petitioner's burden to demonstrate

16   sufficient prejudice to successfully obtain severance of the charges, <u>see</u> <u>Bean</u>, 46

17   Cal. 3d at 939, the Court finds it unlikely either trial or appellate counsel could

18   have successfully challenged the joinder.[10]  Hence, trial and appellate counsels'

19   failure to challenge the joinder of the charges here was not prejudicial under

20

21

22

23

24

---

25   [10]    Indeed, appellate counsel would have faced considerable difficulty

26   prevailing on the joinder issue on appeal because a California appellate court

27   would have reviewed the trial court's joinder ruling for abuse of discretion.  <u>See</u>

28   <u>Jones</u>, 57 Cal.4th at 925.

1   Strickland.[11]  See Strickland, 466 U.S. at 694.  Accordingly, even under *de novo*

2   review, Petitioner is not entitled to habeas relief on Claim Five.

3                                    **VII.**

4                            **RECOMMENDATION**

5          IT IS THEREFORE RECOMMENDED that the District Court issue an

6   order: (1) accepting the findings and recommendations in this Report; (2) directing

7   that judgment be entered denying the Petition; and (3) dismissing the action with

8   prejudice.

9

10  DATED: February 10, 2015

11                                    _____

12                                    HON. KENLY KIYA KATO
                                      UNITED STATES MAGISTRATE JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25  _____

26  [11]     Because the Court finds Petitioner cannot adequately demonstrate prejudice

27  under Strickland, the Court does not reach the issue of deficient performance.  See
    Strickland, 466 U.S. at 697.
28